UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X        Index No.:
D'JUANA DAVIS,

                      Plaintiff,

        -against-        **COMPLAINT**

ANDREW J. HIRSCHHORN ESQ., P.C., ANDREW
HIRSCHHORN, ESQ., individually, and MICHAEL
BIANCANELLO, ESQ., individually,        Plaintiff Demands a Trial
                           By Jury

                      Defendants.
------------------------------------------------------------------------X

Plaintiff, by and through her attorneys, Phillips & Associates, PLLC, hereby complains of the

Defendants, upon information and belief, as follows:

## INTRODUCTION

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

   U.S.C. §2000e *et. Seq.* ("Title VII"), 42 U.S.C. § 1981, and the Fair Labor Standards Act, 29

   U.S.C. §§201 et seq. ("FLSA"), and to remedy violations of the New York State Human

   Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and New

   York Labor Law, based upon the supplemental jurisdiction of this Court pursuant to *Gibb*,

   383 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff

   has suffered as a result of being denied overtime and being harassed and discriminated

   against by the Defendants on the basis of her race and sex/gender, together with sexual

   harassment, creating a hostile work environment, retaliation and wrongful termination.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et. seq.; 42 U.S.C. §1981; 29 U.S.C. §201 et seq.; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of the State of New York.  28 U.S.C. §1391(b).

5. On or about August 2, 2016, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

6. On or about December 9, 2016, Plaintiff received a Notice of Right to Sue letter from the EEOC.

7. This action is being brought within ninety (90) days of said Notice of Right to Sue letter.

## PARTIES

8. Plaintiff is an African-American female resident of the State of New York, County of Queens.

9. At all times material, Defendant ANDREW J. HIRSCHHORN, P.C. was and is a domestic professional corporation duly incorporated under the laws of the State of New York.

10. At all times material, Defendant ANDREW HIRSCHHORN, ESQ. (hereinafter also referred to as "HIRSCHHORN") was an owner of Defendant ANDREW J. HIRSCHHORN, P.C.

11. At all times material, Defendant HIRSCHHORN was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

12. At all times material, Defendant MICHAEL BIANCANELLO, ESQ. (hereinafter also referred to as "BIANCANELLO") was an employee of Defendant ANDREW J. HIRSCHHORN, P.C.

13. At all times material, Defendant BIANCANELLO was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

14. Defendant ANDREW J. HIRSCHHORN, P.C., Defendant HIRSCHHORN and Defendant BIANCANELLO are also herein collectively referred to as "Defendants."

15. At all times material, Plaintiff was an employee of Defendants.

**<u>MATERIAL FACTS</u>**

16. In or around September 2013, Plaintiff began working for Defendant ANDREW J. HIRSCHHORN, P.C. as an "Assistant Paralegal" at its 1 Cross Island Plaza, Suite 116, Rosedale, NY 11422 location. Plaintiff's duties involved scheduling Independent Medical Examinations ("IMEs"), meeting with clients, and performing various clerical tasks for Defendant HIRSCHHORN.

17. Throughout her employment with Defendants, Plaintiff was forced to endure a barrage of sexually harassing and racially offensive comments from Defendant HIRSCHHORN and his associate, Defendant BIANCANELLO.

18. By way of example, on one occasion, Defendant BIANCANELLO said, **"Immigrants are only good for cleaning houses and washing clothes."** Plaintiff replied, "Are you serious? What do you mean?" In response, Defendant BIANCANELLO simply laughed.

19. On another occasion, while discussing presidential candidates with a coworker in front of Plaintiff, Defendant BIANCANELLO complained, **"We already got a black president with Obama. Now they want a woman?!"**

20. Defendant HIRSCHHORN also regularly referred to African-Americans as **"brothas"** and **"sistas."** On one of those occasions, Plaintiff could no longer ignore Defendant HIRSCHHORN's racially harassing comments and complained, "I'm not your sista." Defendant HIRSCHHORN simply laughed.

21. Defendant HIRSCHHORN would also brag to Plaintiff and to Defendant BIANCANELLO about dating and engaging in sexual relationships with young African-American women, including many of his clients.

22. Defendant HIRSCHHORN would tell Plaintiff, **"My women have to be black with a weave, big butt, big titties and ratchet."** Plaintiff was offended by Defendant HIRSCHHORN's stereotypical description of African-American women.

23. On another occasion, Defendant HIRSCHHORN pointed to one of his African-American clients and asked Plaintiff, **"Did you see that girl? She had a really big ass."** Plaintiff told Defendant HIRSCHHORN to stop making inappropriate comments to her about African-American women. Defendant HIRSCHHORN smirked and continued to leer at his client as she walked away.

24. That same day, Plaintiff also complained to Defendant ANDREW HIRSCHHORN, P.C.'s Office Manager, Gwen McGee. Plaintiff told Ms. McGee, "I don't want to hear this anymore." Ms. McGee replied, **"What can we do, that's how he is."**

25. On or about October 29, 2015, at 12:11 a.m., Defendant HIRSCHHORN wrote to Plaintiff in a Facebook message, **"What do u say to a woman in a thong who smells of bad ass? It's like getting smacked in a crowded subway."**

26. During the same conversation, Defendant HIRSCHHORN wrote, **"Dhyana (sic) don't we know when our asses and butt cheeks smell? That shame of it was that the booty was**

**fine… but her cheeks had a yellow shine.”** Plaintiff was disgusted that Defendant HIRSCHHORN's harassment continued even after work hours but still felt that she had to play along to appease Defendant and said, "Yeah she's use (sic) to the smell so it doesn't bother her." Defendant HIRSCHHORN replied, **"Lmfao, you're right! I kissed that shit, literally,"** and continued, **"She says she's a stripper..,.where?  In the sewer?"**

27. That same day, Defendant HIRSCHHORN also sent Plaintiff an email with the subject line **"Stink ass thong girl"** and attached five (5) pictures of a woman in various provocative poses.  Plaintiff did not reply to this email.

28. On numerous occasions, Defendant HIRSCHHORN would change his clothes in the back area of the office, remaining only in a sleeveless shirt or no shirt at all, in front of Plaintiff and her other female coworkers.   Plaintiff complained, "Can you please do this in your office?" Defendant HIRSCHHORN simply laughed.

29. Defendant HIRSCHHORN and Defendant BIANCANELLO would also regularly discuss sexually inappropriate topics next to Plaintiff, specifically so she would hear the discussion.

30. For example, Defendant HIRSCHHORN walked toward Plaintiff's cubicle and started to talk to Defendant BIANCANELLO about a pornographic video he had viewed.  Defendant HIRSCHHORN said, **"And he wrestles you down and three guys hold you and he blows you."**  Defendant HIRSCHHORN then said, **"Now my trick, and because he looks like this fucking girl, is say 'yeah this is the greatest night of my life, you're gorgeous, look at those boobies… only it's a dude.'"**

31. On another occasion, Defendant HIRSCHHORN again walked toward Plaintiff's cubicle and told Defendant BIANCANELLO, **"Even a little prostate needs a little touching sometimes,"** and **"Even the prettiest prostate goes out on Saturday nights."**

32. On yet another occasion, in a conversation Plaintiff recorded, Defendant HIRSCHHORN and Defendant BIANCANELLO started talking, right next to Plaintiff, about Defendant HIRSCHHORN's sexual experience with a transgender woman. Defendant HIRSCHHORN said, **"I can't lie, I mean why is her face so fucking stubbly? And I'm like maybe there's some estrogen issues or something, you know some girls have facial hair, I'm like what the fuck do I know?!**  Defendant BIANCANELLO simply laughed, and encouraged Defendant HIRSCHHORN to continue with his offensive comments.  Defendant HIRSCHHORN then said, **"When a chick really knows football inside and out, and the NBA you've got a problem.  You gotta start doing the Crocodile Dundee test…"** (referring to grabbing a woman's genital area in order to verify that she does not have testicles).

33. On another occasion, Defendant HIRSCHHORN and Defendant BIANCANELLO discussed transgender individuals and HIV/AIDS.  Defendant HIRSCHHORN said, **"When they get a real legal name and driver's license and everything, it makes you nauseous. We're making out, I was getting aroused, she took me out for my birthday."**  Defendant BIANCANELLO replied, **"You can't blame you, it's not your fault."**  Defendant HIRSCHHORN then said, **"No but she was in like spandex and shit.  With the dating sites as they are now and the social media, like a fucking transgender site.  I'm sure there's enough men who want to date a guy who's dressed as a woman or with a dick or whatever you call it, then you can find some."**

34. Defendant BIANCANELLO then said, **"All these transgenders, they have HIV a lot, they're dirty…"**  Defendant HIRSCHHORN replied, **"Straight guys doing butt fucks, they'll put a condom on, they'll protect themselves.  Transgenders don't, I don't know**

**why, it's sad."** Defendant BIANCANELLO then asked, **"Do you think people with HIV should be marked? I mean you're a walking health crisis, why should other people have to be around you? How is that their problem that you caught some disease that you can transmit to them?"**

35. Plaintiff could not endure the hostile work environment and pleaded, "Could you go in your office with this!?" Defendant HIRSCHHORN and Defendant BIANCANELLO laughed and continued their conversation next to Plaintiff.

36. Despite Plaintiff's numerous complaints to her supervisors, the harassment continued.

37. For example, on or about May 17, 2016, Defendant HIRSCHHORN ordered a lingerie set to be delivered at the office. Defendant HIRSCHHORN opened the box and displayed the lingerie set next to Plaintiff's desk. Defendant HIRSCHHORN then pointed to the lingerie set and told Plaintiff, **"That looks like it could fit you. That might look good on you!"** Plaintiff asked Defendant HIRSCHHORN to remove the lingerie from the office space. Defendant HIRSCHHORN, as usual, simply laughed and ignored Plaintiff.

38. Plaintiff complained to Defendant HIRSCHHORN and Defendant BIANCANELLO numerous times to stop their inappropriate comments and discussions, but it nevertheless continued.

39. Defendants failed to properly remedy or prevent the harassment.

40. On or about June 6, 2016 at 4:00 p.m., Defendant HIRSCHHORN started screaming at Plaintiff and her coworkers to go home. Defendant HIRSCHHORN said, "Don't come back to work unless I call you. If you come back, you're fired and I'll get you arrested."

41. The above are just some of the examples of the harassment Plaintiff had to endure while working for Defendants.

42. Plaintiff never received a call from Defendant HIRSCHHORN asking her to return to work, although her coworkers were asked to return.

43. On or about June 8, 2016, Defendant HIRSCHHORN sent Plaintiff's belongings to her home, along with a termination letter stating that Plaintiff was terminated on June 6, 2016 at 4:45 pm.

44. Defendants terminated Plaintiff because she continuously opposed their unlawful conduct.

45. On or about July 11, 2016, Plaintiff's attorney sent an offer of settlement with a draft complaint to Defendants.  Several weeks later, Plaintiff filed her charge with the EEOC.

46. On or about October 13, 2016, Plaintiff received a call from the New York State Labor Department informing her that Defendant HIRSCHHORN contested her claim for unemployment benefits.

47. Defendant HIRSCHORN falsely contested Plaintiff's claim for unemployment benefits in retaliation for Plaintiff exercising her protected rights and to coerce/intimidate Plaintiff into not further exercising her protected rights.

48. Defendants' actions were intended to, and did, create a hostile work environment that no reasonable person would tolerate.

49. Defendants would not have harassed Plaintiff but for her race.

50. Defendants would not have harassed Plaintiff but for her sex/gender.

51. Defendants would not have retaliated against Plaintiff but for her opposition to Defendants' unlawful employment practices.

52. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

53. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, she suffered and continues to suffer severe emotional distress and physical ailments.

54. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all Defendants jointly and severally.

**WAGE VIOLATIONS**

56. Plaintiff was regularly engaged by Defendants to work more than 40 hours in a week without being paid the overtime premium pay for all hours worked in excess of 40 in a week, as required by the FLSA and New York State Labor Law Articles 6 and 19.

57. Plaintiff is a nonexempt employee within the meaning of the FLSA.

58. Throughout her employment, Plaintiff would regularly begin work at 8:30 am or 9:00 am and would often work as late as 6:00 pm or 6:30 pm.

59. During the course of her day, Plaintiff was not granted a half hour lunch break. Defendants refused to provide employees with required meal breaks in violation of Section 162 of the New York State Labor Law.

60. Although Plaintiff regularly worked more than 40 hours in a week, she was not paid time and a half for any hours worked over 40.

61. By way of example, during the two-week period beginning on June 27, 2015, Plaintiff worked a total of 86 hours at a rate of $16.50/hour.  Plaintiff did not receive the overtime rate for any hours worked over 40 each week.

62. As another example, during the two-week period beginning on September 19, 2015, Plaintiff worked a total of 84 hours at a rate of $16.50/hour.  Plaintiff did not receive the overtime rate for any hours worked over 40 each week.

63. As yet another example, during the two-week period beginning on November 30, 2015, Plaintiff worked a total of 88 hours at a rate of $16.50/hour.  Plaintiff did not receive the overtime rate for any hours worked over 40 each week.

64. These are just some of the examples of Defendants' overtime violations.

65. In or around early 2015, in a temporary effort to limit liability for his willful overtime violations, Defendant HIRSCHHORN told all nonexempt employees that they were not allowed to work overtime.  Specifically, employees were told that they should not work past 5:00 pm.  However, almost immediately, work began to accumulate and Defendant HIRSCHHORN forced numerous employees, including Plaintiff, to work past 5:00 pm *without any compensation*.  After several months, however, Defendant HIRSCHHORN discontinued the policy and continued to have employees, including Plaintiff, work overtime hours for straight pay.

66. Defendants have willfully refused to pay overtime wages owed to Plaintiff for working hours in excess of 40 hours per week, at a rate of one and a half times her normal rate of pay.

10

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## <u>DISCRIMINATION</u>

67. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendants.  Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and sex/gender, together with sexual harassment, creating a hostile work environment and unlawful termination.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## <u>RETALIATION</u>

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

71. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et Seq. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendants,

11

including, but not limited to terminating Plaintiff's employment and/or failing to rehire Plaintiff.

### AS A THIRD CAUSE OF ACTION
### UNDER FEDERAL LAW
### 42 U.S.C. Section 1981

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. 42 U.S.C. Section 1981 states in relevant part as follows:

   (a)   Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

   (b)   "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

74. Plaintiff, a member of the African-American race, was discriminated against because of her race as provided under 42 U.S.C. Section 1981, as well as being retaliated against for complaining about the harassment and has suffered damages as set forth herein.

12

## AS A FOURTH CAUSE OF ACTION
### UNDER STATE LAW
### DISCRIMINATION

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's… race [or]…sex, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her race and her sex, together with sexual harassment, creating a hostile work environment and unlawful termination.

78. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS A FIFTH CAUSE OF ACTION
### UNDER STATE LAW
### AIDING & ABETTING

79. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

80. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any act forbidden under this article, or attempt to do so."

81. Defendants violated the section cited herein as set forth.

13

**AS A SIXTH CAUSE OF ACTION**
**UNDER STATE LAW**
**RETALIATION**

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

84. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to her employer's unlawful employment practices.

**AS A SEVENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**DISCRIMINATION**

85. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

86. The New York City Administrative Code Title 8-107(1) provides that: "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived race…gender… of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107 (1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her race

14

and sex/gender, together with sexual harassment, creating a hostile work environment and unlawful termination.

**AS AN EIGHTH CAUSE OF ACTION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
AIDING & ABETTING**

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. The New York City Administrative Code Title 8-107(6) provides that it shall be an unlawful discriminatory practice, "For any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this chapter, or attempt to do so."

90. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A NINTH CAUSE OF ACTION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
RETALIATION**

91. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

92. The New York City Administrative Code Title 8-107(7) provides that:

> "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…"

15

93. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff, including, but not limited to terminating Plaintiff's employment.

**AS A TENTH CAUSE OF ACTION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**INTERFERENCE WITH PROTECTED RIGHTS**

94. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

95. New York City Administrative Code Title 8-107(19), interference with protected rights, provides:

> It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

96. Defendants violated this section cited herein as set forth.

**AS AN ELEVENTH CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**OVERTIME**

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

98. Defendants willfully employed Plaintiff for work weeks longer than 40 hours and failed to compensate Plaintiff for her employment in excess of 40 hours per week, at a rate of at least one and one-half times the rate at which she was employed.

99. Defendants failed to pay overtime wages to Plaintiff as required by the FLSA, 29 U.S.C.

16

§201 et. seq. and its implementing regulations.

100. Defendants' failure to pay Plaintiff overtime pay in accordance with the FLSA, was a direct violation of the FLSA, specifically 29 U.S.C. §207.

101. Defendants' failure to pay proper overtime wages for each hour worked over 40 per week was willful within the meaning of 29 U.S.C. §255.

102. Defendants' failure to comply with the FLSA caused Plaintiff to suffer a loss of wages.

**AS A TWELFTH CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK WAGE AND HOUR LAW**
**AND VIOLATION OF Title 12 NYCRR Section 142-2.2**
**OVERTIME RATE**

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. Plaintiff was an employee of Defendants within the meaning of New York Wage Regulations, specifically NYCRR Labor Section 138 et. Seq.

105. Defendants failed to pay Plaintiff a premium for hours worked in excess of 40 hours per week.

106. Defendants violated Plaintiff's rights to overtime pay under Title 12 NYCRR 142-2.2.

107. Defendants also failed to pay Plaintiff a premium/additional amount for hours worked in excess of 10 hours per day.

108. Under New York State law, an employee is entitled to an extra hour's wages for any day when the employee's "spread of hours" exceeds 10 hours (12 NYCRR § 142-2.4).

109. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

17

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A.  Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. §1981, the FLSA, New York Labor Law, the NYSHRL and the NYCHRL; and that the Defendants harassed and discriminated against Plaintiff on the basis of her race and sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and unlawful termination;

B.  Declaring that Defendants' violations of overtime wage protections were willful;

C.  Awarding Plaintiff liquidated damages under the FLSA and New York Labor Law for overtime violations;

D.  Awarding damages to the Plaintiff for any lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful employment practice;

E.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

F.  Awarding Plaintiff Punitive Damages;

G.  Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

H.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

18

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:    New York, New York
          February 2, 2017

                        **PHILLIPS & ASSOCIATES,**
                        **ATTORNEYS AT LAW, PLLC**


                        By: _____/s/_____
                            Erica L. Shnayder, Esq.
                            *Attorneys for Plaintiff*
                            45 Broadway, Suite 620
                            New York, NY 10004
                            Tel: 212-248-7431
                            Fax: 212-901-2107
                            Email: eshnayder@tpglaws.com